IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION



| UNITED STATES OF AMERICA, | ) | I N F O R M A T I O N |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. **1:22 CR 227** |
| | ) | |
| DEON D. LEVY, | ) | Title 18, United States Code, |
| ABDUL-AZEEM LEVY, | ) | Section 371 |
| | | |
| Defendants. | | **JUDGE RUIZ** |
| | | **MAG. JUDGE HENDERSON** |

FILED
MAY 1 0 2022
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise specified:

The Paycheck Protection Program

1.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

2.     In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP

loan.  In the PPP loan application (Small Business Administration ("SBA") Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

3.      A PPP loan application was processed by a participating lender.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

4.      PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

<u>The Defendants and Related Entities and Individuals</u>

5.      Apex Now Corp. ("Apex Now") was an Ohio corporation with its listed principal address in Solon, Ohio, which performed construction services in Northeast Ohio and elsewhere.

6.      Urban Housing Group LLC ("Urban Housing") was an Ohio corporation with its listed principal address in Highland Heights, Ohio, which had limited operations, but performed some construction services in Northeast Ohio.

7.    DEON D. LEVY, a resident of Bedford Heights, Ohio, was the true owner and manager of Apex Now and Urban Housing. DEON D. LEVY was also the father of ABDUL-AZEEM LEVY and Person 1, and the husband of Person 2.

8.    DEON D. LEVY generally operated Apex Now under the alias of Person 1, who was the purported owner and manager of Apex Now.

9.    DEON D. LEVY generally operated Urban Housing under the alias of Person 2, who was the purported owner and manager of Urban Housing.

10.    Bank 1 was a federally insured bank located in Cincinnati, Ohio.

11.    Bank 2 was a financial institution based in Fort Lee, New Jersey, that was insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank 2 was an approved SBA lender of PPP loans.

12.    Bank 3 was a financial institution based in Salt Lake City, Utah, that was insured by the FDIC. Bank 3 was an approved SBA lender of PPP loans.

13.    Bank 4 was a federally insured bank located in New York, New York.

14.    Bank Processor 1 was a third-party company processor, based in Redwood City, California, that processed PPP loan applications for Bank 2 and Bank 3. Members of the public could access an online portal for applying for PPP loans through Bank Processor 1's website, and it received applications through that portal submitted to its servers located in California.

15.    ABDUL-AZEEM LEVY, a resident of Bedford Heights, Ohio, was the sole signatory on a business checking account at Bank 1 in the name of Apex Now (the "Apex Now Account"), but permitted DEON D. LEVY to operate the Apex Now Account under his name. ABDUL-AZEEM LEVY also assisted DEON D. LEVY in the operations of Apex Now and Urban Housing.

16.    James Richard Stote (charged separately) was a resident of Broward County, Florida.

17.    Ross Charno (charged separately) was a resident of Broward County, Florida.

<u>COUNT 1</u>
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 371)

The Acting United States Attorney charges:

18.    The allegations contained in paragraphs 1 through 17 of this Information are incorporated by reference as if stated fully herein.

<u>The Conspiracy and Scheme to Defraud</u>

19.    From in or around May 2020, and continuing through in or around June 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants DEON D. LEVY and ABDUL-AZEEM LEVY, James Richard Stote (charged separately), and Ross Charno (charged separately) did willfully, that is, with the intent to further the object of the conspiracy, knowingly combine, conspire, confederate, and agree together and with each other and with others known and unknown to the Acting United States Attorney, to commit an offense against the United States, that is, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

4

Purposes of the Scheme

20.     The purposes of the scheme included, but were not limited to, the following: for Defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting, and causing to be submitted, false and fraudulent applications for loans and grants made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic, including PPP loans; (b) offering, paying, and receiving kickbacks in return for the submission of false and fraudulent loan applications; and (c) diverting fraud proceeds for Defendants' and co-conspirators' personal use, the use and benefit of others, and to further the conspiracy.

Manner and Means of the Scheme

21.     The manner and means by which Defendants and their co-conspirators carried out the scheme included, but were not limited to, the following:

        a.     DEON D. LEVY, Stote, Charno, and other co-conspirators submitted and caused to be submitted fraudulent PPP loan applications for Apex Now, Urban Housing, and other entities, via interstate wire communications.

        b.     The PPP loan applications that DEON D. LEVY, Stote, Charno, and others, submitted and caused to be submitted for Apex Now, Urban Housing, and other entities, included falsified bank statements and payroll tax forms, among other things, and falsely and fraudulently represented the borrowing entities' operations and finances, including the number of employees and amount of monthly payroll.

        c.     Using interstate wire communications, DEON D. LEVY provided Stote and Charno with documents and information concerning Apex Now and Urban Housing for

Stote and Charno to use to obtain funds for DEON D. LEVY, including falsified bank statements for the Apex Now Account.

        d.    Using interstate wire communications, DEON D. LEVY, Stote, and Charno arranged for DEON D. LEVY to send to Stote kickbacks of approximately 25% of the amount of the PPP loans.

        e.    ABDUL-AZEEM LEVY maintained the Apex Now Account under his name for DEON D. LEVY to use under false pretenses, in order to avoid scrutiny from law enforcement, creditors, and Bank 1.

        f.    DEON D. LEVY also used Person 1's identity as an alias to avoid scrutiny from law enforcement, creditors, and financial institutions.

        g.    ABDUL-AZEEM LEVY made false representations and submitted falsified documents to Bank 1 in order to assist DEON D. LEVY in obtaining funds from the PPP loan to Apex Now.

Overt Acts

    22.    In furtherance of the conspiracy, and to accomplish its object and purpose, Defendants and their co-conspirators committed and caused to be committed, in the Northern District of Ohio, and elsewhere, the following overt acts, among others:

    23.    In or around April 2020, DEON D. LEVY emailed and texted with Stote and Charno about other attempts to obtain loans for DEON D. LEVY's businesses and to improve the credit profiles of Person 1, Company 1, and Company 2. DEON D. LEVY had provided Stote and Charno with falsified bank statements for the Apex Now Account for use in these efforts.

24.     On or about May 15, 2020, after Stote had initial success obtaining approvals for PPP loans for other co-conspirators, DEON D. LEVY and Charno exchanged text messages discussing a "[n]ew loan program." Charno sent DEON D. LEVY a screenshot from Bank Processor 1's website of an approval for a PPP loan for "another client" in the among of "$244,062.00." DEON D. LEVY provided Charno with information, including false representations, regarding Apex Now, and directions to send funds to the Apex Now Account. Charno responded with another screenshot showing, "You qualify for $554,232," and stating that confirmations and instructions would be sent to an email address not known to DEON D. LEVY, which Stote controlled.

25.     On or about May 17, 2020, Charno sent a text message to DEON D. LEVY to obtain a copy of a check for the Apex Now Account, which DEON D. LEVY provided., for use in finalizing the application.

26.     On or about May 18, 2020, Stote and Charno submitted a fraudulent PPP application for Apex Now for $554,232, through Bank Processor 1 to Bank 2, relying on, among other things, one of the falsified Apex Now Account statements DEON D. LEVY had provided and falsified IRS Forms 941 showing fabricated payroll expenses.

27.     On or about May 18, 2020, Charno sent DEON D. LEVY a message stating, "Hey pls call me asap. Have great news." The two spoke by telephone, and Charno informed DEON D. LEVY that the $554,232 loan had been approved, and Charno then began requesting that DEON D. LEVY pay Charno and Stote a 25% fee for obtaining the loan.

28.     On or about May 20, 2020, the Apex Now PPP loan was processed and funded.

29.     On or about May 21, 2020, Charno sent a text message to DEON D. LEVY stating, "U should have the funds."

30.     On or about May 22, 2020, the PPP loan cleared in the Apex Now Account, showing as a $554,232 credit labeled, "CRB [Bank Processor 1] SBA Loan Apex Now Corp 052220."

31.     On or about May 25, 2020, Charno forwarded to DEON D. LEVY an email from Stote, in which Stote provided instructions for DEON D. LEVY to send the 25% fee. Stote wrote that the wire for DEON D. LEVY "is 138,558.25" and should be sent to a specified account controlled by Stote.

32.     On or about May 25, 2020, DEON D. LEVY and Charno spoke first by telephone and then by text messages and email about obtaining another PPP loan for Urban Housing, which DEON D. LEVY represented as his "sister's" company. After discussing the plan on the telephone, DEON D. LEVY sent an email to Charno with information to use in Urban Housing's application. After reviewing that information, Charno sent DEON D. LEVY by email a blank "intake form," which contained fields for the information he and Stote needed to fabricate the application documents and fill out other aspects of the PPP application: identifying information about the owner and company, as well as bank account information for receiving the loan. A section at the end marked "BELOW IS OFFICE USE ONLY" included blank fields for the "Number of Employees," "Monthly Payroll Expense," and "SBA Loan Pre-Approval Amount." Charno sent DEON D. LEVY an email stating, "i sent u an intake sheet she [DEON D. LEVY's purported sister] has to fill out." Within approximately two hours, DEON D. LEVY returned the completed form with information for Person 2, Urban Housing, Urban Housing's account at Bank 4 (the "Urban Housing Account"). Later that night, DEON D. LEVY sent Charno an email with a copy of a February 2020 Bank 4 statement for the Urban Housing Account.

33.     On or about May 26, 2020, Charno sent text messages to DEON D. LEVY inquiring about the 25% fee for Apex Now's PPP loan, stating, "Funds should have cleared for sure," and, "Everyone elses did."

34.     On or about May 27, 2020, DEON D. LEVY and Charno had a series of conversations on the telephone and by text message. During those conversations, they discussed DEON D. LEVY taking steps to resolve issues with the Urban Housing PPP application through Bank Processor 1, including DEON D. LEVY speaking with representatives from Bank Processor 1. After speaking with Bank Processor 1 representatives, DEON D. LEVY sent Charno a message stating, "Can you double back with [Bank Processor 1] and see if there is issue. Talked with manager, they said she would be reaching out." After Stote amended details in the Urban Housing application, Charno sent a message to DEON D. LEVY stating, "Ur sister has to accept on her email. Cant reach either of u and gotta get this in." DEON D. LEVY responded, "Done."

35.     On or about May 28, 2020, Stote finalized an application on behalf of Urban Housing for a $320,767 PPP loan from Bank 3, through Bank Processor 1, which was funded and disbursed to the Urban Housing Account.

36.     On or about May 29, 2020, Charno sent a text message to DEON D. LEVY, stating, "Pls call me. Ur sister should have gotten stuff by now." He added, "80190 is the amount for urban housing that needs to be wired," and provided wiring instructions to an account controlled by Stote.

37.     On or about June 1, 2020, after the Urban Housing PPP loan cleared in the Urban Housing Account, DEON D. LEVY and Charno exchanged text messages about the payment for Urban Housing's loan. DEON D. LEVY sent a message stating, "Pls send a confirm on the wire.

I know ur busy but they are asking." DEON D. LEVY responded that Person 2 had an appointment that day.

38.     On or about June 1, 2020, Person 2, acting at DEON D. LEVY's direction, from a Bank 4 branch in the Northern District of Ohio, Eastern Division, initiated a wire transfer of $80,190 from the Urban Housing Account to the same account to which Charno had instructed DEON D. LEVY to send the money.

39.     On or about June 1, 2020, DEON D. LEVY forwarded a message that he had received from Person 2 that said "Done" and attached a picture of a Bank 4 "Wire Transfer Outgoing Request" for the wire that had just been sent.

40.     On or about June 3, 2020, ABDUL-AZEEM LEVY reviewed options for applying for additional PPP loans on the website for Bank Processor 1, and for obtaining other forms of Small Business Administration pandemic relief.

41.     On or about June 5, 2020, DEON D. LEVY, representing himself as ABDUL-AZEEM LEVY, had a series of conversations on the telephone with an undercover investigator (the "UC") posing as a Bank 1 compliance officer. During those conversations, the UC explained that the Apex Now Account had been placed on hold following the receipt of the PPP loan because the loan was in the name of Person 1, while ABDUL-AZEEM LEVY was the only authorized signer on the account. DEON D. LEVY, still posing as ABDUL-AZEEM LEVY, explained that Person 1 could not personally appear to provide his consent, but agreed to obtain and bring a signed and notarized statement by Person 1 expressing his approval of the disbursement, and that ABDUL-AZEEM LEVY would also sign forms indicating his approval of the Apex Now Account receiving the PPP loan.

42.    On or about June 8, 2020, Defendants drove to the Bank 1 branch location in Solon, Ohio, to meet with the UC.  Defendants brought with them a document authorizing the Apex Now Account to receive the Apex Now PPP loan, which purported to bear the notarized signature of Person 1, but which Defendants in fact knew had not been signed by Person 1 or notarized by a true notary.

43.    On or about June 8, 2020, as ABDUL-AZEEM LEVY entered the bank location, DEON D. LEVY sent ABDUL-AZEEM LEVY a text message instructing ABDUL-AZEEM LEVY to "Grab $12k" from the Apex Now Account once the hold on the account was released.

44.    On or about June 8, 2020, ABDUL-AZEEM LEVY, seeking to assist DEON D. LEVY with releasing the hold on the Apex Now Account, met with the UC, and provided the UC with the purportedly notarized document.  ABDUL-AZEEM LEVY presented this document with a copy of Person 1's driver's license.

All in violation of Title 18, United States Code, Sections 371.

MICHELLE M. BAEPPLER
Acting United States Attorney


By: _____
CHELSEA S. RICE
Chief, White Collar Crime Unit